JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 JUL 25 AM 9:38
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| UNITED DEBT SETTLEMENT, LLC, a New York Limited Liability Company | §  EP22CV0254 |
| | § |
| Defendant. | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2.  Defendant UNITED DEBT SETTLEMENT, LLC ("United") is a limited liability company organized and existing under the laws of New York and can be served via registered Duane Morris LLP, 1330 Post Oak Boulevard, Suite 800, Houston, TX 77056.

### JURISDICTION AND VENUE

3.  Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing

1

robocalls to Plaintiff; adds little complexity to the case.

4. Personal Jurisdiction. This Court has general personal jurisdiction over the Defendant United because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff. Defendant United has a registered agent in the State of Texas.

5. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every automated text message from the Defendant United that are the subject matter of this lawsuit.

6. This Court has venue over the defendant because the automated text messages at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number

assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

21. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are

generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

26. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28. Plaintiff has been on the National Do-Not-Call Registry since April 6, 2022 and was on the National Do Not Call Registry at all times relevant to this Complaint.

29. Defendant United is registered in Texas as a foreign limited liability company. Defendant United has had their right to transact business in Texas revoked.

30. Defendant United has previously been sued for TCPA violations *Callier v. United Debt Settlement, LLC et al* 3:20-cv-00235-DCG (W.D.TX., Sept. 03, 2020), *Benitez v. United Debt Settlement, LLC et al* 3:21-cv-01204-H-WVG (S.D.CA., Jul. 01, 2021) and continue to alter their illegal behavior because violating the TCPA benefits them financially.

31. Defendant United is well aware of the requirements of the TCPA and the National Do Not Call registry and continues to willfully ignore these requirements.

32. On May 13, 2022, at 10:01 AM Defendant sent Plaintiff an automated text message soliciting Plaintiff for a restructuring of business debt. The message instructed Plaintiff to call 516-200-6920. The text message ended with "Respond 'Stop' to stop receiving messages." *Exhibit A.*

33. On May 13, 2022, at 2:03 PM Defendant sent Plaintiff another automated text message

soliciting Plaintiff for a restricting of debt. The text message instructed Plaintiff to call 516-200-6920. The text message ended with "Respond 'Stop' to stop receiving messages." *Exhibit B.*

34. On July 19, 2022, at 11:06 AM Plaintiff received an automated Text message from phone number 719-625-2998 stating "BDP – Are Merchant Cash Advances hurting your business? Our Debt Relief Plan can cut payments by 60%, call us now at 877-477-2556. Text STOP to end." *Exhibit C.*

35. On July 20, 2022, at 11:29 AM Plaintiff called phone number 877-477-2556 in order to determine who had sent the anonymous automated text messages.

36. Plaintiff was connected to Danny Brown Jr. ("Brown") as a result of the phone call in paragraph 27. Brown solicited Plaintiff for debt relief and Plaintiff pretended to be interested in order to find out who was behind the phone calls.

37. On July 20, 2022, at 11:33 AM, Brown sent Plaintiff a text message from phone number 516-200-6920. The text message contained Brown's email address danny.brownjr@unitedsettlement.com. *Exhibit D.*

38. Plaintiff sent Defendant United an internal Do Not Call (DNC) policy request to info@unitedsettlement.com on July 21, 2022 which is an email listed on their website they own and control https://unitedsettlement.com.

39. Defendant United did not send Plaintiff a copy of their internal DNC policy.

40. Table below displays the automated text messages made to Plaintiff by Defendant United.

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 05/13/2022 | 10:01 AM | 516-447-4773 | Automated text message from United |

7

| 2 | 05/13/2022 | 2:00 PM | 516-447-4773 | Automated text message from United |
| 3 | 07/19/2022 | 11:06 AM | 719-625-2998 | Automated text message from United |
| 4 | 07/20/2022 | 11:33 AM | 516-447-4773 | Text message from United rep Danny Brown Jr. |

41. Defendant United initiated numerous unsolicited text messages and made unlawful telemarketing sales pitches about restructuring and eliminating debt.

42. Each and every automated text message Plaintiff received from Defendant United was placed while knowingly ignoring the national do-not-call registry. Each and every text message was placed without training their agents/employees on the use of an internal do-not-call policy.

43. Defendant United is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant United's registration.

44. Defendant United does not qualify for an exemption under § 302.053.

45. No emergency necessitated none of the alleged illegal automated text messages.

46. On information and belief, Defendant United did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

47. On information and belief, the Defendant United did not have a written do-not-call policy while they were sending Mr. Salaiz the text messages.

48. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

49. No emergency necessitated the automated text messages.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

8

## AS A RESULT OF THE AUTOMATED TEXT MESSAGES

50. Defendant United's automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

51. Defendant United's automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

52. Defendant United's automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

53. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## Plaintiff's cell phone is a residential number

54. The calls were to Plaintiff's cellular phone (915) 929-1527 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

55. The actions of Defendant United violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant United violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47

9

USC 227(e).

56. The automated text messages by Defendant United violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code 302.101

57. The actions of Defendant United violated the Texas Business and Commerce Code 302.101 by placing solicitation automated text messages to a Texas resident without a valid solicitation registration certificate and bond on file with the Texas Secretary of State.

58. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227(b)(1)(A)
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

59. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60. Defendant United and/or their agents placed automated text messages to Plaintiff's cellular telephone.

61. Plaintiff never consented to receive automated text messages from Defendant United. Plaintiff has had no relationship with Defendant United.

62. Defendant United's automated text messages were made for purposes of advertising and soliciting their "debt relief" services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

63. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

64.    As a result of their unlawful conduct, Defendant United repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant United to stop their unlawful text message campaigns.

65.    Not only did Defendant United make these violating automated text messages, but Defendant United and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

66.    If the Court finds that Defendant United willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

67.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

68.    The foregoing acts and omissions of Defendant United and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

69.    Defendant United sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

70. Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by Defendant United's automated text messages described above, in the amount of $500 per automated text message.

71. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

72. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

73. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

74. The foregoing acts and omissions of Defendant United and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

75. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

76. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

77. Plaintiff incorporates the foregoing allegations as if set forth herein.

78. The foregoing acts and omissions of Defendant United and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. Defendant United violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

79. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

80. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**



**+1 516-447-4773**
+1 516-447-4773

Friday, May 13, 2022

Hi David - I'm getting back to you about your request for assistance in restructuring your business debt. Are you available now for a quick call?

Feel Free to Call Me:
516-200-6920

Respond "STOP" to stop receiving messages.

10:01 AM

Hi David, this is Jimmy with United. I'm getting back to you about your request in seeking options to restructure some of the bad **debt** on the business. I have availability from 4:00 PM - 6:00 PM EST today if that time slot works for you, for a quick call.

Feel Free to Call Me:
516-200-6920

**Exhibit A**

3:19 🔔                                                                 🔋 📶 74%

< **+1 516-447-4773**
   2:00 PM, May 13

Hi David, this is Jimmy with United. I'm getting back to you about your request in seeking options to restructure some of the bad **debt** on the business. I have availability from **4:00 PM** - **6:00 PM** EST today if that time slot works for you, for a quick call.

Feel Free to Call Me: **516-200-6920**

Respond "STOP" to stop receiving messages.

Copy text       Share       More

|||        O        <

Exhibit B



Exhibit C

3:19 ☁   🔋 📶 74%

‹  **+1 516-447-4773**   📞  📹  ⋮
    +1 516-447-4773

  Respond "STOP" to stop
  receiving messages.   10:01 AM

👤  Hi David, this is Jimmy with United. I'm getting back to you about your request in seeking options to restructure some of the bad debt on the business. I have availability from <u>4:00 PM</u> - <u>6:00 PM</u> EST today if that time slot works for you, for a quick call.

Feel Free to Call Me:
<u>516-200-6920</u>

Respon
─────────────────
View all   ›   2:00 PM

Wednesday, July 20, 2022

👤  <u>danny.brownjr@</u>
<u>unitedsettlement</u>
<u>.com</u>
Send STOP to
Unsubscribe       11:33 AM

🖼 📷 ＋ | 😊 🎵

**Exhibit D**

|||   ○   ‹